**In re GALVESTON CENTRAL APPRAISAL DISTRICT.**

and

**In re Valero Refining–Texas, L.P.**

Nos. 14–07–00630–CV, 14–07–00829–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 13, 2008.

Anthony P. Brown, Houston, Michael B. Hughes, and Heather Bradford Patterson, Galveston, for Galveston Central Appraisal District.

JoAnn Storey, Lance H. Lubel, Denmond Heard, Justin R. Goodman, and Daryl L. Moore, Houston, for Valero Refining–Texas, L.P.

Anthony P. Brown, Houston, Timothy A. Beeton, Galveston, Edward Kliewer III, William T. Sullivan, and W. Wendell Hall, San Antonio, for Marathon Ashland Petroleum, LLC/BP Products North America, Inc.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

In this consolidated original proceeding, Galveston Central Appraisal District ("GCAD") seeks mandamus relief from discovery orders dated May 31 and July 18, 2007, signed by respondent, the Honorable O.A. "Lonnie" Cox, presiding judge of the 56th District Court in Galveston County. Valero Refining–Texas, L.P. ("Valero") seeks mandamus relief from a second May 31, 2007 discovery order of respondent. We deny GCAD's petition for writ of mandamus and Valero's petition for writ of mandamus.

### BACKGROUND

Valero owns a refinery in Galveston County, Texas. In 2005, GCAD appraised the refinery's fair market value at $464,000,000.00. Valero contends its refin-

ery's fair market value is $364,100,000.00. Valero filed a protest of GCAD's appraised value of the refinery with the Galveston County Appraisal Review Board ("ARB"). Valero appeared before, and presented evidence to, the ARB. The ARB denied Valero's protest. Valero appealed the ARB's final orders to the district court, alleging that (1) GCAD's 2005 appraisal of its Texas City refinery exceeded the refinery's fair market value, and (2) GCAD appraised the refinery unequally as compared to sample properties.

As explained below, GCAD and Valero have sought discovery from each other, and each has filed a petition for writ of mandamus seeking relief from respondent's denial of their respective discovery requests.

## STANDARD OF REVIEW

In order to obtain mandamus relief, a relator must show that the trial court clearly abused its discretion and there is no adequate remedy by appeal. *In re Sw. Bell Tel. Co., L.P.,* 226 S.W.3d 400, 403 (Tex.2007) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). The scope of discovery is a matter of trial court discretion. *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding) (per curiam). Mandamus relief is justified when:

(1) the appellate court would not be able to cure the trial court's discovery error, such as when privileged information or trade secrets would be revealed or production of patently irrelevant or duplicative documents imposing a disproportionate burden on the producing party is ordered;

(2) the party's ability to present a viable claim or defense is severely compro-

mised or vitiated by the erroneous discovery ruling to the extent that it is effectively denied the ability to develop the merits of its case; or

(3) the trial court's discovery order disallows discovery which cannot be made a part of the appellate record, thereby denying the reviewing court the ability to evaluate the effect of the trial court's error.

*In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding) (per curiam).

## GCAD's PETITION FOR WRIT OF MANDAMUS

### GCAD's Discovery Requests

GCAD sought information from Valero regarding the sale of any refinery in the United States since January 1, 2003, whether or not Valero was a party to the transaction. Valero objected to GCAD's requests as overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. GCAD filed a motion to compel. On July 18, 2007, the trial court denied, in part, GCAD's motion to compel, limiting production of information related to the sale of refineries occurring in Galveston County between 2003 and 2005.

GCAD also noticed the deposition of Morgan Stanley & Co. by written questions. In 2005, Premcor, Inc. retained Morgan Stanley to provide a fairness opinion in connection with a merger with Valero Energy Corporation. GCAD seeks the underlying documents utilized by Morgan Stanley in its "sum-of-the-parts" analysis in arriving at an equity valuation for both Premcor and Valero. Claiming the request was overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence, Valero filed a motion to quash, to stay, and for protection. On May 31, 2007, the trial court granted Valero's motion.

On August 1, 2007, GCAD filed a petition for writ of mandamus seeking to compel respondent to (1) vacate his May 31, 2007 order granting Valero's motion to quash in order to allow GCAD to obtain the documents described in its deposition on written questions to Morgan Stanley; and (2) vacate his July 18, 2007 order, and enter an order compelling Valero to produce information regarding nationwide refinery sales.

### Sales Data for Other Refineries

GCAD claims the trial court abused its discretion by limiting discovery on information regarding those refinery sales that occurred in Galveston County between 2003 and 2005. According to GCAD, there are approximately 150 refineries in the United States. Only three of those refineries are located in Galveston County. Between January 2003 and December 2005, only twenty-five refinery sales occurred nationwide, and Valero participated, as either purchaser or seller, in six of those transactions. There were no refinery sales in Galveston County during that period. The most recent sale in Galveston County was Valero's purchase of the Texas City refinery from Basis Petroleum in 1997.

GCAD seeks from Valero information regarding the sale of any refinery in the United States since January 1, 2003. The trial court's order, however, limited discovery to only those refinery sales that occurred in Galveston County from 2003 to 2005. GCAD complains that because there were no refinery sales in Galveston County during that time period, it needs information on nationwide refinery sales to address Valero's claim that the appraised value exceeds fair market value. *See* Tex. Tax Code Ann. § 42.25 (Vernon 2008) ("If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.").

Valero's expert, Viewpoint Energy, utilized the cost method[1] to determine the market value of its Texas City refinery, while GCAD states that its experts utilized the income[2] and market data comparison[3] methods. GCAD complains that it has been denied discovery on the two appraisal methods its experts have chosen and, therefore, the case will be predicated on facts that remain concealed.

GCAD's expert, CB Richard Ellis, Inc., prepared a Summary Appraisal Report for Valero's Texas City refinery (the "Ellis Report"). In order to understand the oil refinery industry, Ellis engaged John D.R. Wright, an energy consultant, to provide industry, market, and value information. Wright also assisted in providing replacement cost new estimates. Wright prepared a report on the "Fair Market Value of Valero Texas City Refinery" (the "Wright Report").

■ Contrary to GCAD's assertion that it was not relying on the cost approach, the Ellis Report utilized both the cost approach and the sales comparison approach in estimating the refinery's value. The Ellis Report further states that Wright also indicated that these were the appro-

---

**1.** *See* Tex. Tax Code Ann. § 23.011 (Vernon 2008)(describing the cost method of appraisal).

**2.** *See* Tex. Tax Code Ann. § 23.012 (Vernon 2008)(describing the income method of appraisal).

**3.** *See* Tex. Tax Code Ann. § 23.013 (Vernon 2008)(describing the market data comparison method of appraisal).

priate approaches. However, Wright states in his report, that of the three recognized methods for establishing fair market value, only the income and comparable sales methods were deemed applicable to the study. Aside from this unexplained conflict between GCAD's appraisal experts, we conclude that GCAD has not shown its experts have been unable to appraise Valero's Texas City refinery without information on nationwide refinery sales.

According to the Ellis Report, Wright's assistance enabled it "to adequately and competently appraise the subject property." The Ellis Report explained that the "appraisal sets forth the most pertinent data gathered, the techniques employed, and the reasoning leading to the opinion of value." Concerning the cost approach estimate, the Ellis Report states:

A report was made available via discovery; "2004 Solomon Report," Bates Stamp Valero 00141–00256. The study published by Solomon & Associates is a detailed study of refinery yields, costs, and operating economics.... Input data requirements are very lengthy and detailed; it is typical for an owner [of the refinery] to dedicate of the order of two person-years of effort per refinery to provide the information required by Solomon. This is all said to make the point that information from these studies are [sic] usually accurate and may be relied upon. Valero provided this study and another for 2002 as their response for a request for the Texas City Refinery yields, costs, and operating economics.

With regard to the sales comparison approach, the Ellis report states that GCAD purchased historical information on refinery sales from Purvin & Gertz International Energy Consultants from 1982 through 2005. Moreover, with regard to land value, the Ellis Report explained that the most similar sales in Brazoria, Harris, and Galveston Counties were selected. They were the most similar in size and waterfront location, and were considered excellent indicators for the subject's land value. Finally, we observe that the Wright Report compares data from Valero's Texas City refinery to 16 other Texas refineries.[4]

GCAD relies on *Ex parte Shepperd* as authority permitting the discovery of expert appraisals of property not in the same area as the property at issue. 513 S.W.2d 813 (Tex.1974) (orig. proceeding). In *Shepperd*, Beever Farms, whose property was being condemned for the construction of IH–35, sought discovery of all expert reports related to all properties acquired for the expansion prepared by experts the State intended to call as witnesses at trial. *Id.* at 814. The reports were "sought as evidence of possible inconsistencies in the appraisers' valuation of other properties which the trial judge in these cases have determined to be essentially similar to the subject properties." *Id.* at 816. The trial court found the reports were material for cross-examination and impeachment purposes, and ordered the appraisals produced. *Id.* at 815.

GCAD asserts, as in *Shepperd*, it needs the discovery to test Valero's expert's valuation of the refinery. GCAD also maintains that it needs the information to de-

---

**4.** Those 16 Texas refineries compared in the Wright Report are Marathon Ashland, Texas City, Texas; Valero Energy Corp., Houston, Texas; Valero Energy Corp., Three Rivers, Texas; Crown Central, Houston, Texas; Valero Energy Corp., Corpus Christi, Texas; CITGO, Corpus Christi, Texas; Total SA, Port Arthur, Texas; ConocoPhillips, Sweeney, Texas; Premcor Refining Group, Port Arthur, Texas; Flint Hills Resources, Corpus Christi, Texas; Shell Deer Park Refining, Deer Park, Texas; ExxonMobil, Beaumont, Texas; BP, Texas City, Texas; and ExxonMobil, Baytown, Texas.

fend the valuation it placed on the Texas City refinery by corroborating information its experts derived from third-party sources and supporting the analyses of those experts. GCAD also believes Valero values its assets differently for ad valorem taxation purposes than it does for its shareholders.

■ However, in *Shepperd*, the trial court found that the properties were "essentially similar to the subject properties." Id. Here, there has been no such finding. Moreover, GCAD admits it does not know if Valero has information on the 19 refinery sales to which Valero was not a party. With regard to GCAD's claim that it needs the discovery to test Valero's expert's values and to corroborate its own experts' reports, a request for document production "may not be used simply to explore." *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995) (orig. proceeding) (per curiam). Instead, requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998) (orig. proceeding) (per curiam).

GCAD has not shown its experts have been unable to competently and adequately appraise Valero's property. GCAD's request is overly broad and is not likely to lead to the discovery of admissible evidence. *See* Tex. Tax Code Ann. § 23.01(b) (Vernon 2008) ("[E]ach property shall be appraised based upon the individual characteristics that affect the property's market value."). We conclude GCAD has not shown the trial court abused its discretion in limiting discovery on refinery sales.

### Morgan Stanley Documents

■ GCAD further contends the trial court abused its discretion by granting Valero's motion to quash GCAD's subpoe-

na and notice to take Morgan Stanley's deposition by written questions. GCAD argues the Morgan Stanley documents involve the valuation of assets, including Valero's Texas City refinery, and are relevant to the central issue here—the fair market value of the refinery—and would lead to the discovery of admissible evidence. The Morgan Stanley documents were not tendered to the trial court for its inspection and are not part of the record in this original proceeding. We cannot say the trial court abused its discretion in granting Valero's motion to quash when those documents were not before the trial court or before this court. *See Walker*, 827 S.W.2d at 837 (stating that the relator has the burden of providing the appellate court with a sufficient record to establish its right to mandamus relief).

### VALERO's PETITION FOR WRIT OF MANDAMUS

### Valero's Discovery Request

On September 8, 2006, Valero served a subpoena on GCAD, seeking information voluntarily submitted as part of the appraisal process to GCAD by BP Products North America, Inc. ("BP") and Marathon Ashland Petroleum LLC ("Marathon") concerning their respective refineries located in Galveston County. GCAD did not object to the discovery on the ground that the information is irrelevant. Instead, GCAD complained that Valero's discovery request sought information that is confidential under Section 22.27 of the Texas Tax Code.[5] Valero filed a motion to compel, and set the matter for a hearing. GCAD did not file a response to Valero's motion, but, on January 10, 2007, BP and Marathon, which were not served with notice of the hearing, objected to the production of the information as confidential under section 22.27, and sought an order protecting the information from produc-

---

5. Tex. Tax Code Ann. § 22.27 (Vernon 2001).

tion. On January 11, 2007, respondent held a hearing on Valero's discovery request. After hearing argument, respondent requested that GCAD tender the information to him *in camera.*

Valero served BP and Marathon each with notice of intention to take deposition on written questions and a subpoena. BP and Marathon each filed a motion to quash and for protective order. On January 24, 2007, GCAD tendered the disputed discovery to the trial court in camera. On February 6, 2007, in a post-hearing letter, Valero attached a proposed protective order that purportedly would limit the disclosure of any confidential documents.[6] On May 31, 2007, the trial court denied Valero's motion to compel.[7]

On October 9, 2007, Valero filed a petition for writ of mandamus seeking to compel respondent to vacate his May 31, 2007 order denying Valero's motion to compel production of the documents submitted to GCAD by BP and Marathon.

### Confidentiality of Documents Submitted to GCAD

Valero argues the trial court abused its discretion by denying the motion to compel the production of documents submitted to GCAD by BP and Marathon. Valero asserts it needs the discovery relating to the BP and Marathon refineries because Section 42.26(a)(3) of the Texas Tax Code requires comparison of Valero's property to comparable properties to determine whether an appraisal district has appraised properties unequally. *See* Tex. Tax Code Ann. § 42.26(a)(3) (Vernon

2008).[8] Valero contends it is reasonably probable the BP and Marathon properties are comparable to, similarly situated to, or of the same general kind or character as its property for the purpose of determining the median appraised value. Moreover, because GCAD stated in its objections that "[GCAD] and its contract valuation engineers rely on information provided voluntarily by property owners on the expectation of confidentiality, in order to assist in the process of valuing property accurately," Valero contends the information it seeks is relevant and will likely lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 192.3.

GCAD, BP, and Marathon argue the information sought by Valero is made confidential by Section 22.27 of the Tax Code, which states:

(a) Rendition statements, real and personal property reports, attachments to those statements and reports, and other information the owner of property provides to the appraisal office in connection with the appraisal of the property, including income and expense information related to a property filed with an appraisal office and information voluntarily disclosed to an appraisal office or the comptroller about real or personal property sales prices after a promise it will be held confidential, are confidential and not open to public inspection. The statements and reports and the information they contain about specific real or personal property or a specific real or personal property owner and information voluntarily disclosed to an appraisal

---

6. The proposed confidentiality order is not included in the mandamus record.

7. There is no order in the mandamus record ruling on the BP's and Marathon's motions to quash.

8. Section 42.26(a)(3) provides:

(a) The district court shall grant relief on the ground that a property is appraised unequally if:

\* \* \*

(3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

Tex. Tax Code Ann. § 42.26(a)(3).

office about real or personal property sales prices after a promise it will be held confidential may not be disclosed to anyone other than an employee of the appraisal office who appraises property except as authorized by Subsection (b) of this section.

Tex. Tax Code Ann. § 22.27(a)(Vernon 2008).

Section 22.27(b), however, provides information made confidential by subsection (a) may be disclosed "in a judicial or administrative proceeding pursuant to a lawful subpoena." Id. § 22.27(b)(1). Valero argues it has met both requirements of section 22.27(b)(1) because the tax suit is a judicial proceeding, and GCAD never disputed that Valero served it with a lawful subpoena.

Under Section 25.195(a) of the Tax Code, a property owner is entitled to inspect the records in the possession of the appraisal district, including, except as provided by section 25.195(b), material or information obtained under section 22.27, which is used in making appraisals relating to that property. Id. § 25.195(a) (Vernon 2008). However, GCAD, BP, and Marathon contend that subsection (b) of section 25.195 does not permit a commercial property owner such as Valero to obtain information voluntarily given to a central appraisal district under section 22.27, even if one of the enumerated exceptions to the confidentiality of the rendition information is applicable. See id. § 25.195(b). Specifically, under section 25.195(b), "[t]he owner of property other than vacant land or real property used for residential purposes or the owner's agent may not inspect any

material or information obtained under Section 22.27." Id.

No Texas court of which we are aware has addressed the interplay of sections 22.27(b) and 25.195(b) of the Tax Code. Prior to the addition of subsection (b) to section 25.195, and the amendment of subsection (a) to provide for the express reference to section 22.27 in 1997, the Texas Attorney General construed sections 22.27 and 25.195 as giving property owners a special right of access to confidential information that was filed by others under section 22.27 and used to appraise the owner's property. Tex. Att'y Gen. ORD–550 (1990); Tex. Att'y Gen. ORD–500 (1988).[9] After the Texas Legislature added subsection (b), the Attorney General opined that section 25.195(b) limits "the right of access to information filed by others and made confidential under section 22.27 to owners of vacant land and residential real property, thus precluding owners of real property used for *commercial purposes* from obtaining such information." Op. Tex. Att'y Gen. No. JC–0424 (2001) (emphasis added).

■ The parties do not contend, and we do not find, that sections 22.27(b) and 25.195(b) are in conflict but, instead, may be harmonized. Section 25.195(b) merely prohibits the disclosure of confidential information permitted under section 22.27(b) to commercial property owners. Even if these two statutes were in conflict, we must hold that 25.195(b) prevails because it was added in 1997, after 22.27(b) was added in 1979 and effective in 1982. See Tex. Gov't Code Ann. § 311.025 (Vernon 2005) (providing that if statutes enacted at

**9.** The 1987 version of section 22.27(a) stated: "After the chief appraiser has submitted the appraisal records to the appraisal review board as provided by Section 25.22(a) of this code, a property owner or his designated agent may inspect the appraisal records relating to property of the property owner, togeth- er with supporting data and schedules used in making appraisals for the appraisal records, relating to that property." Act of Apr. 29, 1987, 70th Leg., R.S., ch. 38 § 1, 1987 Tex. Gen. Laws 72 (current version at Tex. Tax. Code Ann. § 22.27(a)).

the same time or different sessions of the legislature are irreconcilable, the statute with the latest enactment date prevails). We conclude the trial court did not abuse its discretion in denying Valero's motion to compel.[10]

### CONCLUSION

Neither GCAD nor Valero has established its entitlement to the extraordinary relief of a writ of mandamus. Accordingly, we deny both GCAD's and Valero's respective petitions for writ of mandamus.

10. In a post-submission brief, Valero argues that GCAD, BP, and Marathon have waived any reliance on section 25.195 because they did not specifically argue its applicability in the trial court. Valero essentially posits that any discussion of section 22.27 should be in a vacuum without any mention of section 25.195. We reject Valero's contention. Instead, GCAD, BP, and Marathon's argument based on section 25.195, which expressly refers to section 22.27, is subsumed by their broad confidentiality objections based on section 22.27.