ACCEPTED
01-15-00228-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/15/2015 2:46:26 AM
CHRISTOPHER PRINE
CLERK

No. 01-15-00440-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/15/2015 2:46:26 AM
CHRISTOPHER A. PRINE
Clerk

IN THE FIRST DISTRICT COURT OF APPEALS OF TEXAS

_____

IN RE ERNEST R. KOONCE, RELATOR

_____

Original Proceeding From the 127th Judicial District Court of
Harris County
Cause No. 2010-64752

_____

REPLY TO SUPPLEMENTAL PETITION FOR WRIT OF MANDAMUS

ERNEST R. KOONCE
Pro Se
15938 Fleetwood Oaks Drive
Houston, Texas 77079
Tel: (832) 434-3183
Fax: (832) 328-7171
rayk469@gmail.com

No. 01-15-000228 and 01-15-00440

_____

IN THE FIRST COURT OF APPEALS OF TEXAS

_____


IN RE ERNEST R. KOONCE, RELATOR


_____

Original Proceeding From the 127th Judicial District Court of Harris County, Texas
Cause No. 2010-64752

_____


REPLY TO SUPPLEMENTAL PETITION FOR WRIT OF MANDAMUS

ERNEST R. KOONCE
RELATOR, Pro Se
15938 Fleetwood Oaks Drive
Houston, Texas 77079
Tel: (832) 434-3183
Fax: (832) 328-7171
rayk469@gmail.com

TO THE HONORABLE COURT OF APPEALS OF TEXAS:

Ernest R. Koonce, Relator, and those similarly situation, respectfully submit this Reply to Supplemental Petition for Writ of Mandamus and Brief, and would show the Court as follows:

IDENTITY OF PARTIES AND THEIR COUNSEL

Relator, Ernest R. Koonce, hereby certifies that the following are the list of parties and their respective counsel, if any, to the best of his knowledge and understanding of the rules.

| PARTIES | COUNSEL |
|---|---|
| Relator<br>ERNEST R. KOONCE | Pro Se |
| Respondent | |
| HONORABLE RK SANDILL | 127thth Civil District Court of Harris County, TX<br>201 Caroline, 10th Floor<br>Houston, Texas 77002<br>Court Phone Number:<br>(713) 368-6161 |
| Chris Daniels<br>Harris County District Clerk | 201 Caroline<br>Houston, Texas 77002 |
| Real Party in Interest: | |
| WELLS FARGO BANK, NA | Bradley Chambers<br>Texas Bar No. 2400186<br>Valerie Henderson<br>Texas Bar No. 24078655<br>Baker, Donelson, Bearman,<br>Caldwell & Berkowitz, P.C.<br>1301 McKinney Street<br>Suite 3700<br>Houston, Texas 77010<br>(713) 650-9700 – Telephone<br>(713) 650-9701 – Facsimile<br>vhenderson@bakerdonelson.com |

**TERMS AND ABREVIATIONS USED WITHIN THE REPLY BRIEF**

| | |
|---|---|
| AP. | Appendix supplied by Koonce. It specifically refers to Appendix and supporting affidavit, which is part of the Supplemental Petiton for Writ of Mandamus. |
| CR | Clerk's Record |
| DT | Deed of Trust |
| Koonce | Ernest Ray Koonce, plaintiff/cross-defendant, and Appellant/Realtor |
| MNT | Motion for New Trial |
| MSJ | Motion for Summary Judgment |
| PSA | Pooling and Servicing Agreement |
| PET. | Petition for Writ of Mandamus and Notice of Accelerated Appeal. |
| RFP | Request for Production of Documents |
| RR | Reporter's record |
| SACC | WF Second Amended Counterclaims |
| SCR | Supplemental Clerk's Record |
| SJ | Summary Judgment |
| SP | Supplemental Petition for Writ of Mandamus |
| WF | Unless otherwise noted, Wells Fargo Bank, NA also known as Wells Fargo Bank, NA as Trustee (they are the same entity) |
| WFR | Wells Fargo's records filed with this court. |

TABLE OF CONTENTS

**Cases**

*Abdygapparova v. State,* 243 S.W.3d 191, 208 (Tex. App.-San Antonio 2007, pet. ref'd). ................................................................................................ 28

*Alexander,* 226 S.W.2d at 1001 ................................................................ 14

Chambers v. Nasco, Inc., 501 US 32, 44 (1991)...................................... 14

*Erskine v. Baker,* 22 S.W.3d 537, 539 (Tex.App.-El Paso 2000, pet. denied)..... 28

*Hazel-Atlas,* 322 U. S., at 245 ................................................................ 14

In Re Carrsow Franklin, @ 46-47 .......................................................... 10

In re Thoma, 873 S.W.2d at 496. .......................................................... 24

*King Ranch,* 118 S.W.3d at 752 ............................................................ 14

Mann, Supra.......................................................................................... 19

on    *In re Galveston Cent. Appraisal Dist.,* 252 S.W.3d 904, 909 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ...................................................... 16

*Universal Oil, supra,* at 580 .................................................................. 14

*Walker,* 827 S.W.2d at 837.................................................................... 16

**Statutes**

Tex. Gov't Code Ann. tit. 2, subtit. G, app. B (Vernon 1994 and Supp. 1996). . 24

Texas Code of Judicial Conduct.............................................................. 24

**Other Authorities**

Government Code Section 51.303............................................................ 19

IDENTITY OF PARTIES AND THEIR COUNSEL.................................... 3

**Koonce did seek documentation and does have authority to challenge the Clerk and the Court:**............................................................................. 17

OBJECTION ............................................................................................ 6

**TERMS AND ABREVIATIONS USED WITHIN THE REPLY BRIEF** ...... 4

**WELLS FARGO'S OBJECTIONS**............................................................ 6

**Rules**

**B. Duty of the Judiciary** ...................................................................... 23

Canon 3................................................................................................. 26

**Canon 3.B.(10)**..................................................................................... 23

**Canon 3.B.(11)**..................................................................................... 23

Canon 3A (4) ......................................................................................... 25

Canon 3A(5) .......................................................................................... 25

Canon 3B(8),.......................................................................................... 24

**Canon 8.B.1.**......................................................................................... 23

**Rule 2.9: Ex Parte Communications, ABA**............................................ 21

Texas Code of Judicial Conduct: ............................................................ 23

## OBJECTION

Realtor objections to WF's summary of argument and prejudicial statements solely designed to prejudice the court against Realtor when it claims that Realtor "continues to live in his house for free". That statement is irrelevant to the case at hand, and said merely to prejudice the court against Realtor. Realtor moves to strike that statement and all other prejudicial statements that have nothing to do with this Mandamus proceedings. If anyone is trying to get a house for free, it's WF.

## A. WELLS FARGO'S OBJECTIONS:

Contrary to WF claims, the appendix was labled, and tabbed, as required by Tex. Rules of App. Pro. WF is blatantly lying about this fact. The court rejected Koonce's initial brief and required him to tab it, and the supplemental brief has papers between each appendix, clearly labeled and its tab. This is exactly the type of falsehood WF has consistently claimed throughout the litigation.

WF next objects to Appendix 16, which is Wells Fargo's Attorney Foreclosure Manual. In Koonce's supplemental petition, he explains to the Court that WF refused to produce this document pursuant to RFP 18. See Ap.19, RFP 18. Furthermore, as explained in Koonce's Reply Brief, this particular document, as well as Kennerty's deposition (Ap.17), was not known at the time of the hearing, and it was not available. In Re Carrsow-Franklin, 524 B.R. 33 (2015), was not decided until January 29, 2015, less than two weeks before the hearing, and Koonce was unaware of the case. However, WF refused to provide this document pursuant to a proper discovery request. App.19, RFP 18, which is in their typical fashion. Koonce should not be penalized for WF not producing it and not knowing about it until after the hearing. Furthermore, WF likewise asked the Court to take judicial documents which were not before the trial court, and once again asks for special treatment.

WF has not demonstrated any harm by this Court taking judicial notice of App. 16, and the specific pages referenced by Koonce., i.e., pages 2 , 3 (Foreclosure Special Team  Responsibilities – includes document preparation and execution and to "provide attorney with any necessary document and **execute any necessary**

**document**"), 14 (Default Documents), 20 (Assignments), 21, 22, 23 preparation of assignments, which clearly demonstrate that Wells Fargo routinely makes up assignments in order to create documents allowing it to foreclose. The entire manual is an elaborate scheme for how to produce missing documents to foreclose on homeowners, which is consistent with Wells Fargo's documents in this case. Page 28 deals specifically with Executable Documents which includes assignments and states "remove all social security numbers, loan numbers...**prior to submitting the documents to Wells Fargo for execution**."

Page 32 talks about the Executable team and the "Non-MERs" must have executed assignments, and properly executed documents must be obtained. Page 36, "Executable Documents Delay Tracking" talks specifically about Motions for Summary Judgments, and executable documents necessary to obtain an order. Page 146 and 147 again talks about executing documents and fees for preparation of those documents prior to foreclosure or Motions for Summary judgment. Realtor has alleged since 2006 that Wells Fargo is not the owner and holder of his note, that its documents are fraudulent and created solely for the purpose of foreclosure.

In Re Carrsow-Franklin, 524 B.R. 33 (2015), the opinion by the Honorable Robert D. Drain, a judge in the Bankruptcy Court of the Southern District of New York held that Wells Fargo had failed to establish standing to foreclose on the debtor's mortgaged real property. *Id.* at 54-55. In so holding, **he expressed suspicion** with **Wells Fargo's production**, *after* the initiation of the action, **of a note different from the note it presented when it commenced the action**, and indorsed, for the first time, in blank, and several assignments.   The court found the Assignment was prepared by Wells Fargo's then counsel to "**improve" the record supporting Wells Fargo's right to file a secured claim**, similar to the "improvement" of the record in *In re Tarantola,* upon which the court relied, along with the **two different versions of the note** at issue there, to find that the presumption of authenticity was rebutted. 2010 WL 3022038, at *4-5, 2010 Bankr.LEXIS 2435, at *12-13.  After review of the WF Attorney Foreclosure Manual and Kennerty Deposition, Judge Drain held **that the evidence presented at an evidentiary hearing showed "a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its**

**claims**," and that Wells Fargo had therefore not met its burden of establishing that the indorsement on the newly produced note was genuine. *Id.* at 47.

Judge Drain further found In Re Carrsow Franklin, @ 46-47 "It appears from Mr. Kennerty's deposition transcript, although his testimony on this point was at times quite evasive, that during the period in question in 2010 he signed on average between 50 and 150 original documents a day in connection with Wells Fargo's administration and enforcement of defaulted loans. Deposition Transcript, dated October 15, 2012, of Herman John Kennerty ("Dep.Tr.") at 89-92. This was part of his duties as the Wells Fargo manager in charge of "default documents." *Id.* at 44. In other words, on a daily basis Mr. Kennerty and his team, members of which he also testified signed a like number of documents each day, *id.,* processed a large volume of loan documents for enforcement with very little thought about what they were doing. It is not clear that Mr. Kennerty fully understood the legal consequences of signing these documents; for example, he testified when shown the Assignment of Mortgage that he executed it not on behalf of the

assigning party but, rather, on behalf of the party "in getting the assignment," although he also testified that "I'm — I'm not an attorney, but the way I understand this document, it was assigning the mortgage, taking it out of MERS' name and putting into Wells Fargo Bank's name." *Id.* at 93-4. It is clear, however, that he pretty much signed whatever outside counsel working on the default put in front of him and that these documents often included assignments, including the Assignment of Mortgage, drafted by Wells Fargo's outside enforcement counsel to fill in missing gaps in the record.

Thus, in describing the work of his "assignment team" Mr. Kennerty stated, "[I]f there was not an assignment in there [that is, in Wells Fargo's loan file] then they would — excuse me, they would advise the attorney that we did not have it, that they would need to draft the — the appropriate assignment." *Id.* at 116. *See also id.* at 76 ("[I]f the assignment needed to be created they would have advised the attorney, the requesting attorney to — that we did not have the assignment in the collateral file, then they needed to draw up the appropriate document."); *id.* at 121 ("Once it [that is, the

11

collateral file] was received then they would check to see if it was something that could be used or not used; and, if it's something that was in the file, but couldn't be used then they would advise the requesting attorney to go ahead and draft the actual document.").

Because Wells Fargo does not rely on the Assignment of Mortgage to prove its claim, the foregoing evidence is helpful to the Debtor only indirectly, insofar as it goes to show that the blank indorsement, upon which Wells Fargo *is* relying, **was forged."**

This case is directly on point. It's exactly what happened in Koonce's case as Ap.4, Ex. "C" shows assignments dated 3/27/12 which is consistent with WF policy of generating fraudulent documents anytime it needs one to foreclosure or needed for court to prove ownership. The next document, App.5, shows new assignments that WF forged and filed with the court dated February 17, 2005. WF selectively omitted these documents for the record.

As stated in Koonce's Reply, Ap.4, Ex. A does not have any indorsement, or one firmly affixed to the Note. This is prima facie evidence that WF is not the owner or holder of the note, and could not have obtained it through means of negotiation or otherwise.

The note is payable to Argent Mortgage Company, LLC which no longer exists.

WF's next objection is Ap. 17, the Deposition of H. John Kennerty, stating it wasn't before the trial court. This deposition was unavailable at that time. However, Judge Drain specifically refers to the same provision of Kennerty's deposition in In Re Carrsow-Franklin, 524 B.R. 33, 46-47 (2015) as set forth above. This deposition is directly relevant to the issue at hand because Koonce has always maintained that his documents were forgeries. Under Vazquez v. *Deutsche Bank National Trust Company,* N.A., NO. 01-13-00220-CV, 2014 WL 3672892, at *4 (Tex. App.-Houston [1st Dist.], July 24, 2014) the assignment is void ab initio. WF specifically concealed this information, and now seeks to benefit from it. For the reasons set forth in great detail and briefed, WF is barred from asserting it is the owner and holder of Koonce note and deed of trust.

Extrinsic fraud is fraud that denies a litigant the opportunity to fully litigate at trial all the rights or defenses that could have been asserted.[14] *King Ranch,* 118 S.W.3d at 752. It occurs when a

litigant has been misled by his adversary by fraud or deception, or was denied knowledge of the suit. *Alexander,* 226 S.W.2d at 1001

The US Supreme Court has held[1] "This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas,* 322 U. S., at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner. . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.,* at 246. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. *Universal Oil, supra,* at 580."

Next, WF objects to Ap.18, the affidavit of Christine Reule and its exhibits showing the number of times documents and information was requested to clarify this matter, and the stone wall, runaround and outright refusal to provide the answers. The trial court outright refused to provide response.

On May 5, 2015, Koonce filed his Plaintiffs Notice that A Ruling on His Motion for Accelerated Appeal Is Overdue As A

---

[1] Chambers v. Nasco, Inc., 501 US 32, 44 (1991)

Hearing Was Set by Submission On February 23, 2015, And Notice that evidence Is Missing In Cause NO. 2007-30212 in the 127th Judicial District Court.   In that motion, Koonce asked the court to provide an explanation as to why documents were missing and how the status was changed from dismissed final, to active without any hearing, the exact same issues before this Court.  The court denied the motion on May 11, 2015.  That order is before this Court.

Koonce is attaching as Appendix 23, a true and correct copy of his "Plaintiffs Notice that a Ruling on his Motion for Accelerated Appeal is Overdue as a Hearing was Set by Submission on February 23, 2015, and Notice that Evidence is Missing in Cause No. 2007-30212, in the 127th Judicial District Court; and as Appendix 24, a true and correct copy of the Court's order denying the request.

The affidavit is relevant because it sets out the fact that even with the assistance of a family friend, the court and the clerk's office went to great lengths to cover up whatever transpired below with regard to the change in the docket, which appears to be ex parte in nature.  It's highly suspicious activity.

WF does not complain of any inaccuracies in the records themselves to which it objected, they merely make an unfounded

15

claim that it wasn't before the trial court below, or otherwise demonstrates any harm. WF's reliance on *In re Galveston Cent. Appraisal Dist.*, 252 S.W.3d 904, 909 (Tex. App.—Houston [14th Dist.] 2008, no pet.) is misplaced.

In that case, Gaveston Central Appraisal District issued subpoena and notice to take Morgan Stanley's deposition by written questions, which the trial court quashed. The court held "GCAD argues the Morgan Stanley documents involve the valuation of assets, including Valero's Texas City refinery, and are relevant to the central issue here—the fair market value of the refinery—and would lead to the discovery of admissible evidence. The Morgan Stanley documents were not tendered to the trial court for its inspection and are not part of the record in this original proceeding. We cannot say the trial court abused its discretion in granting Valero's motion to quash when those documents were not before the trial court or before this court. *See Walker,* 827 S.W.2d at 837 (stating that the relator has the burden of providing the appellate court with a sufficient record to establish its right to mandamus relief)." Obviously, the trial court quashed the subpoena because it

16

didn't have document necessary to make a proper ruling. That is not the case here.

This is an entirely separate issue from a Declaration clarifying efforts, and documents that were unavailable due to WF's conduct in refusing to provide them. The court should overrule the objection as it is unfounded, unsubstantiated, and irrelevant to this case. Furthermore, in the interests of justice and judicial expediency, WF objections should be overruled.

**OBJECTION:**

Koonce objects to WF's response to supplement Writ of Mandamus on the grounds it does not address any of Koonce's issues in his supplemental Writ under heading "A" (p.10-15). It merely rehashes what WF already claimed in their response. There's nothing new, and therefore it should be struck.

**Koonce did seek documentation and does have authority to challenge the Clerk and the Court:**

WF claims that Koonce did not properly seek documents from the Clerk of the Court, implies Koonce should have filed a lawsuit and sought discovery, and further does not have standing to

challenge the Clerk's actions in these proceedings, which is not true.

These arguments are without merit and WF has cited no authority that requires a party to obtained discovery from the Clerk, and thereby has waived this argument.

Nowhere in any statute does it require Koonce to do so. That position is absurd. The clerk's records are a matter of public record. Under WF's unsupported theory, anytime a member of the public requests a document or questions what happened to a document, or why a docket changed, they would have to file suit and seek discovery. WF has tried to illegitimately reframe the issue into a discovery issue consistent with the Tex. Civ. Rules of Procedure. That is not the issue her. All Koonce is trying to do is determine what happened and if there was any misconduct, and the clerk has outright refused to provide any answers to anyone, and so has the trial court. The only way to obtain this information is through a Writ of Mandamus directing the parties to provide the answers and produce missing documents. If there is corruption at work here, then the Mandamus is the proper fire hose to extinguish that blaze in the system.

In Mann v. Ramirez, 905 S.W. 2d 275, (Texas 1995), a case involving a traffic accident and misconduct by the clerk's office, including destroying document, and the clerk's duty pursuant to Government Code Section 51.303. Nowhere in that case did the Supreme Court require a party to file a lawsuit, or otherwise conduct discovery to compel the Clerk to comply with its duties under section 51.303, or provide answers to why a status was changed, on whose authority it was made, etc.

WF's argument is without merit, unsupported by any authority, and therefore waived.

WF next claims C and D are inadequately brief. As pointed out by Koonce, there is no case law directly on point. As stated above, Government Code Section 51.303 as cited by WF, states what the clerk's duties are. The Clerk is a Custodian of Records, Mann, Supra, and as such, has a duty to maintain the records, provide an explanation as to why they are missing as any other custodian would do. This naturally requires an investigation. D merely refers the court to C above so as to not be duplicative in the argument.

Government Code Section 51.303 provides:

Sec. 51.303. DUTIES AND POWERS. (a) The clerk of a district court has custody of and shall carefully maintain and arrange the records relating to or lawfully deposited in the clerk's office.

(b) The clerk of a district court shall:

(1) record the acts and proceedings of the court;

(2) enter all judgments of the court under the direction of the judge; and

(3) record all executions issued and the returns on the executions.

(c) The district clerk shall keep an index of the parties to all suits filed in the court. The index must list the parties alphabetically using their full names and must be cross-referenced to the other parties to the suit. In addition, a reference must be made opposite each name to the minutes on which is entered the judgment in the case.

(d) Repealed by Acts 1995, 74th Leg., ch. 641, Sec. 1.05, eff. Sept. 1, 1995.

(e) The clerk of a district court may:

(1) take the depositions of witnesses; and

(2) perform other duties imposed on the clerk by law.

(f) In addition to the other powers and duties of this section, a district clerk shall accept applications for protective orders under Chapter 71, Family Code.

Nowhere in Chapter 51 of the Government code does it give

specific instruction on what to do in case of missing records, nor

instructions that discovery must be made before the clerk has to answer questions, etc. The legislature most likely never contemplated that the clerk would refuse to exercise its duty as custodian and provide responses to reasonable questions. This is a case of first impression. The redress is through a mandamus proceeding.

Next, WF claims that Koonce did not provide a copy of the document to which he filed his supplemental petition. This was an over sight and has been corrected. It is now App. 23 and 24, respectively, as stated above. The copies are sworn to in compliance with the rules. WF did not object or move to strike, and therefore has waived it. Furthermore, the late filing does not harm WF in any way. In all the confusion, it was inadvertently omitted.

WF claims that Koonce is not entitled to discover whether an ex part communication took place. This is erroneous.

Rule 2.9: Ex Parte Communications, ABA:

(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending* or impending matter,* except as follows:

21

(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

(2) A judge may obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

(4) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

(5) A judge may initiate, permit, or consider any ex parte communication when expressly authorized by law* to do so.

(B) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

(D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

Texas Code of Judicial Conduct:

## Canon 3.B.(10)

A judge shall abstain from public comment about a pending or impending proceeding which may come before the judge's court in a manner which suggests to a reasonable person the judge's probable decision in a particular case. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. This section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This section does not apply to proceedings in which the judge is a litigant in a personal capacity.

## Canon 3.B.(11)

A judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity. The discussions, votes, positions taken, and writings of appellate judges and court personnel about causes are confidences of the court and shall be revealed only through a court's judgment, a written opinion or in accordance with Supreme Court guidelines for a court approved history project.

## Canon 8.B.1.

"Shall" or "shall not" denotes binding obligations the violation of which can result in disciplinary action.

## B. Duty of the Judiciary

*as quoted from In re J.B.K* 931 S.W.2d 581 *(Tex. App. - El Paso 1996, n.w.h.)*

23

"Individual judges are charged with the task of adjudicating claims in a manner that protects the rights of all parties to the litigation. It is for that reason that ex parte communications between parties to pending litigation and members of the judiciary tasked to resolve those claims undermine the public's right to evaluate whether justice is being done. Ex parte communications frustrate the judiciary's responsibility to promote and provide fair and equal treatment to all parties. See In re Thoma, 873 S.W.2d at 496. It is perhaps for that reason, among others, that the Texas Code of Judicial Conduct provides that, except as authorized by law, a judge shall not initiate, permit, or consider ex parte or other private communications made to the judge outside the presence of the parties. Further, a judge shall require compliance with this subsection by court personnel subject to the judge's direction and control. Texas Supreme Court, Code of Judicial Conduct, Canon 3B(8), Amended to Sept. 1, 1994, reprinted at Tex. Gov't Code Ann. tit. 2, subtit. G, app. B (Vernon 1994 and Supp. 1996)."

Canon 3A(5) provides that a judge shall not permit or consider improper ex parte or other private communications concerning the merits of a pending or impending judicial proceeding. (Canon 10 provides that the word "shall" when used in the Code means compulsion.) Judges may comply with Canon 3A(5) by doing the following: 1) Preserve the original letter by delivering it to the court clerk to be file marked and kept in the clerk's file. 2) Send a copy of the letter to all opposing counsel and pro se litigants. 3) Read the letter to determine if it is proper or improper ex parte communication; if improper, the judge should send a letter to the communicant, with a copy of the judge's letter to all opposing counsel and pro se litigants, stating that the letter was an improper ex parte communication, that such communication should cease, that the judge will take no action whatsoever in response to the letter, and that a copy of the letter has been sent to all opposing counsel and pro se litigants.

Canon 3A (4) provides that a judge shall accord to every person who is legally interested in a proceeding the right to be heard according to law. Consideration of an ex parte communication would be

25

inconsistent with Canon 3A(4), because it would not accord to other parties fair notice of the content of the communication, and it would not accord to other parties an opportunity to respond.

Canon 3 provides that the judicial duties of a judge take precedence over all the judge's other activities. A judge's consideration of a controversy that is not brought before the court in the manner provided by law would be inconsistent with the judicial duty to determine "cases" and "controversies (Art. 3, Constitution of the United States). A judge has no authority or jurisdiction to consider; or to take any action concerning, out-of-court controversies. A judge's consideration of a controversy that is not properly before the court could give the appearance of inappropriate action under color of judicial authority, which would tend to diminish public confidence in the independence and impartiality of the judiciary, rather than promote it as Canon 1 and Canon 2 require a judge to do.

Finally, a judge should try to minimize the number of cases in which the judge is disqualified. If a judge permits a communication to the judge concerning any matter that may be the subject of a

judicial proceeding, that could necessitate disqualification or recusal.

In Stone v. FDIC, 179 F.3d. 1368, 1376 COA, Federal Circuit 1999, the court held:

"The introduction of new and material information by means of **ex parte communications** to the deciding official **undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond.** When deciding officials receive such *ex parte* communications, employees are no longer on notice of the reasons for their dismissal and/or the evidence relied upon by the agency. Procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information.[4] It is constitutionally impermissible to allow a deciding official to receive additional material information that may undermine the objectivity required to protect the fairness of the process. Our system is premised on the procedural fairness at each stage of the removal proceedings. An employee is entitled to a

certain amount of due process rights at each stage and, when these rights are undermined, the employee is entitled to relief regardless of the stage of the proceedings."

Canon three also addresses the judge's duty of impartiality and prohibits, with limited exceptions, any direct or indirect ex parte communications concerning the merits of a pending or impending judicial proceeding. *Id.* Canon 3(B)(8). An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge. *Erskine v. Baker,* 22 S.W.3d 537, 539 (Tex.App.-El Paso 2000, pet. denied). Ex parte communications are prohibited because they are inconsistent with the right of every litigant to be heard and with the principle of maintaining an impartial judiciary. *Abdygapparova v. State,* 243 S.W.3d 191, 208 (Tex. App.-San Antonio 2007, pet. ref'd).

WF attempts to undermine the importance of discovering whether a suspicious conduct was the result of an ex parte communication and ultimately the product of reversal of a judge's decision of an important issue. When an order or proceeding is

tainted, it erodes public confidences in our judiciary systems as being fair and impartial. It impedes justice, and denies a party their due process rights to notification and opportunity to be heard.

In this case, where the trial judge admitted that the case in controversy was extinguished in its entirety by a nonsuit, App.21, refuses to sign an order dismissing the case, the docket mysteriously changes from dismissed final to active without a notice or a hearing, no record of any minutes being entered in compliance with the nonsuit rules, and then suddenly changes it position stating Koonce included another party (WF Trustee) in his petition after clearly stating several times that he did not, and the trial court claiming that Koonce did not dismiss WF, when in fact he did and which was not included at all in the pleading, documents in the clerks file were missing after Koonce pointed out there were two different sets of assignments, calls into question whether or not this was a product of ex parte hearing, corruption or something else. At the end of the day, Koonce needs to get to the bottom of it. It is relevant that the disposition of the case was changed AFTER the court's plenary powers ended. The email exchanges between the clerks office and Ms. Reule who was requesting clarification to

understand why the docket was mysteriously changed, without notice or hearing, who authorized the change, and what happened to documents, and the clerk's outright refusal to respond, makes the entire matter suspect of something more insidious going on. Why would WF object? What are WF and its counsel trying to hide? It seems like WF counsel would likewise want to know why the disposition of the case was changed, and why records are missing. The fact that they oppose the request, and have no authority whatsoever to support their claim that Koonce must conduct discovery on the clerk, makes you wonder what role WF played in all of it. There's never been a recorded case that Koonce can find where something even remotely close has happened in other courts. It just happened against a pro se litigant; WF, its attorneys, and the trial court, and Clerk of Court are trying to take advantage of him. WF's fraud manual also demonstrates that it has no problem with perjury, and with creating fraudulent documents, forging signatures, and filing them with the court. An ex parte communication with the court is not beyond WF.

WF's statements about Reule being a nonparty and not a licensed attorney are irrelevant. There's no law that prohibits Reule

30

from asking questions about how public documents were changed and the disposition of missing documents which appeared to be destroyed immediately after Koonce brought to the trial court's attention and the federal court's attention that the assignments were completely different than those previously filed, which supports Koonce's fraud claims and fraud upon the court. Any member of the public can ask the same questions.  They do not have to have any interest in the case.

WF's claims are nonsense, and this Court has a duty to ensure that justice is served, it was fair, untainted, and when suspicious run so high, this Court is required in the interest of justice to issue a Writ of Mandamus requiring the trial court to provide answers as well as the clerk.  According to the trial court's clerk, there are no minutes.  All of this is highly suspicious and contrary to Rules of Civil Procedure and state statutes.

## PRAYER

Koonce prays that this court issue its writ of mandamus and instructs both the District clerk, and the trial judge to provide the

31

answers requested, produce the missing documents, and for such other and further relief as the court deems just and proper.

Dated: December 14, 2015     Respectfully submitted,
Word count: 5,282


       /s/ Ernest Ray Koonce
       Ernest Ray Koonce


CERTIFICATE OF SERVICE

Pursuant to Rule 21(a) of the Texas Rules of Civil Procedure, a true and correct copy of the foregoing document has been sent to the following via efiling; on this 14th day of December 2015:

Bradley Chambers
Texas Bar No. 2400186
Valerie Henderson
Texas Bar No. 24078655
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
1301 McKinney Street
Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone
(713) 650-9701 – Facsimile
vhenderson@bakerdonelson.com


       /s/ Ernest Ray Koonce